**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:24-cv-23462-GAYLES**

**RODERICK RUDISEL,**

     **Plaintiff,**

**v.**

**MAURICIO VILLANUEVA, et al.,**

     **Defendants.**

                             /

**<u>ORDER</u>**

**THIS CAUSE** comes before the Court upon Defendants' Revised Motion for Summary Judgment ("Motion"). [ECF No. 24]. The Court has reviewed the Motion, the record, and argument of counsel and is otherwise fully advised. For the reasons below, the Motion is granted.

**<u>BACKGROUND</u>[1]**

This action involves law enforcement's use of a K9 police dog to apprehend Plaintiff Roderick Rudisel ("Plaintiff") after he fled the scene of a crime. Though Plaintiff and Defendants Maurico Villanueva ("Officer Villanueva"), Phanel Dorival ("Officer Dorival"), Andrew Hancsak ("Officer Hancsak"), Jonathan Perigny ("Officer Perigny"), and Michael Chinchilla ("Sgt. Chinchilla") (collectively "Defendants") disagree over some details about the incident, the following facts are undisputed.[2]

---

[1] The facts are gleaned from Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, [ECF No. 23], Plaintiff's Response to Defendants' Statement of Material Facts and Affirmative Statement of Facts, [ECF No. 29], and Defendants' Reply Statement of Undisputed Material Facts, [ECF No. 33].

[2] The parties disagree about (a) when, where, and how officers warned Plaintiff that they would subdue him with a K9 if he did not surrender, (b) the exact length of time the K9 bit Plaintiff, and (c) Officer Dorival, Officer Hancsak, Officer Perigny, and Sgt. Chinchilla's positions during the incident.

On April 14, 2022, someone shot Marcus King ("King") in North Miami Beach, Florida. Officers from the North Miami Beach Police Department ("NMBPD") responded to the scene, where witnesses identified Plaintiff, who had since fled, as the shooter.[3] To search for Plaintiff, NMBPD set up a perimeter and deployed search lights, sirens, and a helicopter. NMBPD also assigned two K9 units to assist in the search. Officer Villanueva, a certified K9 handler, K9 police dog Flash ("Flash"), Officer Dorival, Officer Hancsak, Officer Perigny, and Sgt. Chinchilla were in one unit (the "Team").

Around 11:37 p.m., an anonymous caller reported that Plaintiff was hiding in a shed near 1546 NE 152nd Terrace in North Miami Beach. Based on that information, the Team searched the area house by house. When they arrived at a locked shed located in the backyard of 1583 NE 154th Street,[4] Flash scratched at the door, notifying Officer Villanueva that Plaintiff was in there.

At some point, at the corner of 15th avenue and 152nd Street—a few houses away from the shed—Officer Villanueva announced, "North Miami Beach Police K9, come out now or I will send my dog." [ECF No. 23 ¶ 26].[5] Despite the helicopter noise, sirens, lights, and verbal warnings, Plaintiff remained in the shed. As a result, Officer Dorival, using a key provided by the homeowners, unlocked the door to the shed and Officer Villanueva deployed Flash. Flash bit Plaintiff on his left calf. Once Defendants secured Plaintiff in handcuffs, Flash released his grip.

---

[3] It is undisputed that Plaintiff and King were in an altercation just before the shooting. However, Plaintiff denies that he shot King.

[4] Defendants' Statement of Undisputed Material Facts states that the shed was located at 1583 NE 152nd Street, [ECF No. 23 ¶ 14]; the Incident Report states that the location of the incident was 1483 NE 154th Street, North Miami Beach, Florida 33162, [ECF No. 23-6]; and Sgt. Chinchilla's April 15, 2022 Report identifies the location of the incident as 1483 NE 152nd Street, [ECF No. 29 Ex. C]. The discrepancies between the exact location of the shed does not create a genuine issue of material fact as the parties do not dispute that Plaintiff was hiding in a shed near the corner of 15th Avenue and 152nd Street when Defendants apprehended him.

[5] Plaintiff claims that he did not hear Villanueva's announcement. Defendants also assert that Officer Perigny ordered Plaintiff to show his hands, but Plaintiff failed to comply. Plaintiff disputes this.

According to Defendants, the bite lasted less than one minute.[6] Plaintiff suffered injuries to his left leg which required surgery.

On September 6, 2024, Plaintiff filed this action alleging claims against Officer Villanueva for excessive use of force under § 1983 (Count I) and battery under Florida law (Count III) and against Officer Dorival, Officer Hancsak, Officer Perigny, and Sgt. Chinchilla for failure to intervene under § 1983 (Count II). [ECF No. 1]. In their Motion, Defendants argue that (1) they are entitled to qualified immunity because they acted reasonably under the circumstances and (2) Plaintiff's failure to intervene and battery claims are not viable. [ECF No. 24]. In response, Plaintiff argues that summary judgment must be denied because there are disputed issues of material fact regarding the reasonableness of Officer Villanueva's use of force, whether Officers commanded Plaintiff to surrender prior to sending the K9 into the shed, and whether other officers failed to intervene. [ECF No. 28]. On February 10, 2026, the Court heard argument on the Motion. [ECF No. 41].

## **STANDARD OF REVIEW**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

---

[6] Plaintiff does not provide a specific time the bite lasted, although he contends that the bite "felt like forever" after he was handcuffed. [ECF No. 29 ¶ 35]. Plaintiff also testified that he could not state how he got out of the shed because "[e]verything went black" and he only remembers opening his eyes when he "was on the floor outside." [ECF No. 33 ¶ 58].

An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And "[a]n issue of fact is material  if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (internal quotation omitted).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## ANALYSIS

### I.      Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). It constitutes "an i*mmunity from suit* rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

Defendants bear the burden of establishing that the allegedly unconstitutional conduct occurred while they were acting within the scope of their discretionary authority, an undisputed issue here. The burden thus shifts to Plaintiff "to show that qualified immunity is inappropriate." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016). "To do so, [he] must: (1) allege facts that establish that the officer violated [his] constitutional rights; and (2) show that the right

involved was clearly established at the time of the putative misconduct." *Id.* (internal quotation omitted).

### A.      Constitutional Violation – Excessive Use of Force

Plaintiff claims that Officer Villanueva's use of Flash to apprehend him was an excessive use of force. Under the Fourth Amendment, an officer's use of force is not excessive if it was "objectively reasonable in light of the facts and circumstances confronting" the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Under this standard, courts must "allow for the fact that officers are often required to make 'split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Santana v. Miami-Dade Cty*, 688 F. App'x 763, 770 (11th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014)).

In determining whether an officer's use of force was within the bounds of the Fourth Amendment, the Court analyzes several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. *See also Salvato v. Miley,* 790 F.3d 1286, 1293 (11th Cir. 2015) ("The use of deadly force is more likely reasonable if: the suspect poses an immediate threat of serious physical harm to officers or others; the suspect committed a crime involving the infliction or threatened infliction of serious harm, such that his being at large represents an inherent risk to the general public; and the officers either issued a warning or could not feasibly have done so before using deadly force.") (internal quotation omitted). Courts "also consider the extent of the injury inflicted and whether the use of force was proportionate to its need at the time." *Scott v. Battle*, 688 F. App'x 674, 677 (11th Cir.

5

2017) (internal quotation omitted).

Viewing the record in the light most favorable to Plaintiff, the Court finds that Officer Villanueva's use of force was not excessive. First, Plaintiff was accused of a serious and violent crime—shooting King. Indeed, witnesses identified Plaintiff as the shooter. Second, Plaintiff fled the scene and was considered armed and dangerous. *See Salvato*, 790 F.3d at 1286 (holding that the Court may consider "whether the officer had [an] articulable basis to think [the suspect] was armed.") (internal quotation omitted). Third, Plaintiff was hiding in a dark cluttered shed that did not belong to him and failed to surrender when Defendants arrived. Though Plaintiff claims he could not hear Officer Villanueva's warning, the record reflects that Officer Villanueva made announcements in the area in which Plaintiff hid from law enforcement that he would deploy Flash if Plaintiff did not surrender.[7] Moreover, the helicopter, sirens, and lights in the area, along with Flash's scratch at the shed door, would have alerted Plaintiff to the presence of law enforcement. Despite clear signs that law enforcement was outside the shed, Plaintiff did not present himself or surrender.

The length of time Flash bit Plaintiff does not change this finding. Though Plaintiff claims that the bite "felt like forever" after he was handcuffed, [ECF No. 29 ¶ 35], he also testified that he blacked out and did not know how he got out of the shed. This vague and contradictory testimony is not enough to refute Defendants' evidence that once Plaintiff was handcuffed, or within seconds after, Flash released his bite from Plaintiff. Under these circumstances, the Court

---

[7] Even if Plaintiff did not hear the warning, Officer Villanueva's use of force was still objectively reasonable. Indeed, "neither the Supreme Court nor the Eleventh Circuit has imposed a hard-and-fast rule requiring warnings before *every* police dog deployment." *Moulton v. Prosper*, No. 18-61260, 2019 WL 4345674, at *5 (S.D. Fla. Sept. 12, 2019) (citing *Grimes v. Yoos*, 298 F. App'x 916, 923 (11th Cir. 2008) (emphasis in original). *See also Trammell v. Thomason*, 335 F. App'x 835, 842 (11th Cir. 2009) (holding that an officer's use of a K9 was objectively reasonable even where the plaintiff testified that he heard no warning because there was "no case from [the Eleventh Circuit], the Supreme Court of the United States, or the Supreme Court of Florida" that clearly established that the use of a K9 without warning was unreasonable) (internal quotation omitted). Indeed, at times, the element of surprise may be more appropriate than a warning when apprehending an armed suspect.

finds that Officer Villanueva's use of Flash to apprehend Plaintiff was reasonable and did not constitute an excessive use of force.

### B.  Clearly Established Law

Because Officer Villanueva did not violate Plaintiff's Fourth Amendment rights, the Court does not address whether the law at the time of the challenged conduct was clearly established. *See Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) ("[B]ecause there was no constitutional violation, we need not address whether the constitutional right at issue was clearly established.").[8] Accordingly, the Court finds that Officer Villanueva is entitled to qualified immunity as to Count I.

## II.  Failure to Intervene

Where, as here, the Court finds no excessive use of force, there can be no failure to intervene. *See Crenshaw*, 556 F.3d at 1294 ("[B]ecause Lister did not violate Crenshaw's right to be free from excessive force, Merritt had no attendant obligation to intervene."). Accordingly, Defendants Officer Dorival, Officer Hancsak, Officer Perigny, and Sgt. Chinchilla are entitled to qualified immunity as to Count II.

## III.  State Law Battery Claim

Plaintiff also alleges a Florida state law battery claim against Officer Villanueva. Under Florida law, "[i]f excessive force is used in an arrest, the ordinarily protected use of force by a

---

[8] The Court notes that "[a] right can be clearly established either by similar prior precedent, or in rare cases of obvious clarity." *Plowright v. Miami Dade Cty*, 102 F.4th 1358, 1366 (11th Cir. 2024) (quoting *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015). Here, materially similar cases in the Eleventh Circuit support a finding that Officer Villanueva did not violate Plaintiff's Fourth Amendment rights. *See, e.g.*, *Crenshaw*, 556 F.3d at 1293 (finding officer's use of a K9 did not constitute excessive force where the plaintiff was suspected of armed robbery, had fled from law enforcement, and was believed to possess a weapon); *Jones v. Fransen*, 857 F.3d 843, 853-55 (11th Cir. 2017) (finding officer's use of a K9 did not constitute excessive force where the plaintiff was suspected of burglary, fled from police into challenging terrain, did not respond to the officer's warnings, and refused to surrender). *c.f. Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (finding officer was not entitled to qualified immunity after allowing his K9 to bite the plaintiff for at least 2 minutes where the plaintiff was suspected of a minor crime, immediately surrendered to law enforcement, did not attempt to flee, and did not pose a threat of harm to the officers or the public.).

police officer is transformed into a battery." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3rd DCA 1996). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* As the Court has determined that Officer Villanueva did not use excessive force, he is entitled to summary judgment on Count III.

## CONCLUSION

For these reasons, it is

**ORDERED AND ADJUDGED** that:

1. Defendants' Revised Motion for Summary Judgment, [ECF No. 24], is **GRANTED**.

2. In accordance with Federal Rule of Civil Procedure 58(a), final judgment will be entered separately.

3. Plaintiff's Motion in Limine, [ECF No. 35], is **DENIED** as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of June, 2026.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE